## YORK MFG. CO. v. ROTHWELL.

### (Circuit Court of Appeals, Sixth Circuit. December 2, 1902.)

### No. 1,069.

**1. COUNTERCLAIM—ACTION AGAINST JOINT MAKER OF NOTE—RIGHT TO MAKE COMMON DEFENSE.**

> One of two joint makers of a note, when sued alone thereon, may plead as a counterclaim a breach of warranty in respect to machinery for the purchase price of which the note was given, and which was sold by the plaintiff to the makers of the note jointly.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This action was brought to recover the amount alleged to be due on two promissory notes delivered to the plaintiff by Rothwell, the defendant in error, and John Lovett, as joint makers,—one for the sum of $2,000, and dated February 23, 1899, and one for $1,000, dated March 27, 1899, and due respectively in 90 days from date. Service of process was made upon Rothwell, but Lovett was not served. Rothwell appeared and answered, admitting the making and delivery of the notes, and filed a counterclaim (called in the record a "cross-petition") in which he alleged that the notes were renewals of others which had been given for part of the purchase price of an ice-making plant, which the plaintiff constructed and supplied for Rothwell & Lovett under a contract wherein the vendor guarantied that the machinery should have a "capacity for producing not less than twenty tons of good, clear, marketable ice every twenty-four hours; that the same would not require more than sixty gallons of water per minute, at a maximum temperature of 60 degrees Fahr.; and that said machinery would produce five and one-half tons of ice for each ton of good steam coal, 85 to 90 per cent. combustible,"—whereas, it was averred, "the said ice-making machinery so sold was not as guarantied and represented, but was defective, in this: that said ice machinery would not and did not produce good, clear, marketable ice, because of defects in said machinery, which permitted oil and other foreign substances to accumulate in the condensed water from which ice was frozen; that the condensers, jackets, and distilling apparatus ordinarily required more than sixty gallons of water per minute at a maximum temperature of 60 degrees Fahr., and the ice machine would not produce five and one-half tons of ice for each ton of good steam coal consumed, of from 85 to 90 per cent. combustible; that the failure of said machinery to produce the quantity and quality of ice with the amount of water and coal as aforesaid was due to no fault of defendant, but was the fault of plaintiff in the erection and construction of same; that said Rothwell & Lovett, at divers times since the giving of said notes, notified plaintiff in error that said machinery was not producing the quantity and quality of ice as provided by said contract; and that, by reason of the breach of the guaranty, he [Rothwell] was damaged in the sum of $5,000." To this cross-petition the plaintiff filed a reply, which amounted, in substance, to a denial of the matters therein alleged. Upon the trial, which was by a jury, the plaintiff produced the notes, proved the amount due thereon, and rested. The defendant went into evidence in support of his cross-petition against the objection of the plaintiff that the said cross-petition did not allege any valid defense, and did not state any facts which were available to the defendant as grounds for a counterclaim. The court held otherwise, and the plaintiff took seasonable exceptions as the trial progressed. At the close of the evidence these objections were renewed, and the plaintiff's counsel requested an instruction to the jury that the defendant was not entitled to maintain his cross-petition. The request was refused, and the plaintiff excepted. The jury returned a verdict for the plaintiff for the sum due on the notes in the sum of $3,428.65, and for the defendant on his counterclaim for the sum of $1,500. The court rendered a judgment in favor

of the plaintiff for the difference; that being, in amount, $1,928.65. The plaintiff, complaining that his recovery was reduced by the counterclaim, sued out this writ of error.

Louis J. Dolle, for plaintiff in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge, having made the foregoing statement of the case, delivered the opinion of the court.

There are a great number of assignments of error, but counsel for the plaintiff have simplified the points for review by substantially limiting the discussion to the first three, which are as follows:

"(1) The court erred in overruling the plaintiff's objection to admission of any evidence in support of the defendant's answer and counterclaim. (2) In overruling the plaintiff's motion, made at the close of the evidence offered in chief by the defendant, to direct the jury to return a verdict in favor of the plaintiff, and in overruling the said motion when the same was again renewed at the close of the evidence offered by the plaintiff, and at the close of that offered by the defendant in rebuttal. (3) In refusing to charge the jury as requested by the plaintiff in his request No. 1, which was as follows: '(1) Under the evidence in this case, the defendant is not entitled to a recovery of the claim set forth in his cross-petition, and your verdict should be for the plaintiff for the amount claimed in the amended petition.'"

These propositions are, however, resolvable into two: First, whether the counterclaim was maintainable at all; and, second, whether the evidence given in support of it was sufficient to justify the verdict which established it.

Before proceeding to the discussion of these questions, it should be noted that although the cross-petition speaks of the purchasers of the plant as if they were joint purchasers, simply, the contract offered in evidence shows that it was made by them as partners under the firm name of Rothwell & Lovett. But no question of variance was raised at any time in the court below, and, under the practice of the courts of Ohio, the variance would in such case be disregarded, and the verdict and judgment would be such as the evidence requires.

First, upon the question whether the counterclaim is maintainable upon the case exhibited by the pleadings, it should be observed that we do not have to deal with the question whether one of several joint obligors may, in a suit prosecuted against him alone, recoup damages growing out of some disconnected and independent transaction between the plaintiff and the joint obligors. In the present case the subject-matter of the counterclaim inhered in the original transaction, and touched the consideration of the notes. The action was brought against both the makers, and if service had been made upon both, and the other maker had appeared, no question could have arisen of the right of recoupment. Can the defendant be put in a worse position by the failure of the plaintiff to get service upon the other obligor? The cause of action is still the joint obligation, and is not converted into a several obligation until the judgment is reached. The plaintiff is permitted to pursue to judgment one obligor, when he cannot get service upon the others, because otherwise there might be a total failure of justice. But when the obligor against

whom the recovery is sought has an interest in the subject-matter out of which the cause of action is evolved, it would be an injustice to him to deny him its protection, and turn him around to an independent suit with his co-obligor joined as plaintiff. When the counterclaim, in such a case as this, is founded upon the very consideration of the cause of action, it would seem that the defendant has an absolute right to have his liability settled upon its essential grounds. As said by Mr. Justice Field in Railroad Co. v. Smith, 21 Wall. 255, 22 L. Ed. 513:

"The law does not require a party to pay for defective and imperfect work the price stipulated for a perfect structure, and, when that price is demanded, will allow him to deduct the difference between that price and the value of the inferior work, and also the amount of any direct damages flowing from existing defects, not exceeding the demand of the plaintiffs. This is a rule of strict justice, and the deduction is allowed in a suit upon the contract to prevent circuity of action."

In delivering the opinion in Winder v. Caldwell, 14 How. 434, 14 L. Ed. 487, Mr. Justice Grier said of a claim to recoup in a suit on a building contract:

"Although it is true, as a general rule, that unliquidated damages cannot be the subject of set-off, yet it is well settled that a total or partial failure of consideration, acts of nonfeasance or misfeasance, immediately connected with the cause of action, or any equitable defense arising out of the same transaction, may be given in evidence in mitigation of damages, or recouped, not strictly by way of defalcation or set-off, but for the purpose of defeating the plaintiff's action in whole or in part, and to avoid circuity of action."

The plaintiff has no right to anything beyond this, and cannot be injured by being restricted to such limits. He cannot, after the counterclaim has been thus used, be sued either by the absent party alone, or by him and the original defendant jointly; for in the first instance his action would be subject to abatement for nonjoinder, and in the second the original defendant would be estopped. It may be said that the absent party would thus have his rights precluded without a hearing. But if his co-obligor is left exposed to suit alone upon the joint obligation, the absent party cannot justly complain if his associate makes use of the common defense.

The authorities are quite numerous to the effect that, in circumstances such as are shown in the case before us, one of the joint obligors, when being pursued upon the joint obligation, is entitled to make a common defense, especially when that defense is founded upon matters which are vitally connected with the cause of action. In Stackwood v. Dunn, 3 Q. B. 822, the defendant, who was sued for work and labor, pleaded to the merits that the promises declared upon were made by himself jointly with another, and that the plaintiff was indebted to him and the others jointly, and demanded a set-off. This plea was demurred to upon the ground that the debts were not mutual. Upon the argument, this point being pressed, Coleridge, J., inquired:

"Suppose the third party to be out of the jurisdiction of the court; is the defendant to lose his set-off?" And he further said: "Your demurrer admits that you are suing on a debt due from the two jointly;" and, again, "The debts on both sides are in fact in the same right."

To the suggestion of counsel that the debt set up by the defendant was not in the same right as that claimed by the plaintiff, Wightman, J., said:

"That is the fallacy of your argument. You sue a single party on a joint debt, as you can do, if the defendant does not choose to plead in abatement; but still it is a joint debt on which you are suing."

All the judges agreeing, the judgment was for the defendant. This was a case of set-off, where the rule in respect of mutuality is even more strict than in the case of recoupment; the latter partaking more of the character of an equitable defense.

In McHardy v. Wadsworth, 8 Mich. 349, the action was' upon a promissory note, against the two makers. They made defense by claiming that the note sued on was given for the price of cattle sold by the plaintiff to one of them with a warranty which proved to be false, and they claimed that the damages might be recouped against the sum due on the note. The trial judge held that the two defendants could not make the defense of recoupment upon a sale made to one only, for want of mutuality. This was held to be error. Christiancy, J., in delivering the opinion of the court, said:

"If recoupment were allowed on the same principle of a set-off, merely, this objection would be insurmountable. A set-off is in the nature of a cross-action to the full extent. It does not deny the validity of any part of the plaintiff's claim or cause of action, but sets up a separate and independent claim against the plaintiff, and the defendant is entitled to judgment upon any surplus of his claims beyond those of the plaintiff. A defense by way of recoupment denies the validity of the plaintiff's cause of action to so large an amount as he claims. It is not an independent cross-claim, like a separate and distinct debt or item of account due from the plaintiff, but is confined to matters arising out of or connected with the contract or transaction which forms the basis of the plaintiff's action. It goes only in abatement or reduction of the plaintiff's claim, and can be used as a substitute for a cross-action only to the extent of the plaintiff's demand."

To the same effect are Sillivant v. Reardon, 5 Ark. 140; Mott v. Mott, 5 Vt. 111; McKinnon v. Palen, 62 Minn. 188, 64 N. W. 387; McMasters v. Burnett, 92 Ky. 358, 17 S. W. 1021; Elliott v. Espenhain, 54 Wis. 231, 11 N. W. 513. And such is the law in Ohio. Wagner v. Stocking, 22 Ohio St. 297. There is nothing in the cases (Transportation Co. v. Earhart [C. C.] 96 Fed. 925; Joice v. Cockrill, 92 Fed. 838, 35 C. C. A. 38; Gray v. Rollo, 18 Wall. 629, 21 L. Ed. 927; Bank v. Hunt, 72 Vt. 357, 47 Atl. 1078; Adams v. Bliss, 16 Vt. 42; Johnson v. Kelly, 67 Vt. 386, 31 Atl. 849; Sullivan v. Nicoulin, 113 Iowa, 76, 84 N. W. 978; Miller v. Crigler, 83 Mo. App. 395; Morris v. Dock Co., 91 Ill. App. 437; Wolfe v. Jasspon, 126 Mich. 11, 85 N. W. 260) cited by the plaintiff which militates against this doctrine in its application to the facts and circumstances of the present case.

The case of Joice v. Cockrill was decided by this court. So far as it is at all pertinent to the question here involved, the case was this: The action was upon a promissory note of two makers, one of whom was surety for the other. The note was given for part of the purchase price of some property sold to the principal maker by a receiver under the order of a court. Part of the property sold

consisted of some promissory notes then in the hands of a bank. The note in suit was assigned by the receiver to the bank, and, the bank having failed, its receiver brought suit to recover the sum due upon it. One of the defenses made by the surety was that the promissory notes above mentioned (those sold by the receiver to the principal maker of the note in suit) had not been delivered to the purchaser, and were wrongfully withheld from him by the bank, whereby there had been a partial failure of the consideration for the note in suit. It was not denied by this court that the general rule would permit the surety to make the defense of his principal and co-obligor. Indeed, it was said by Judge Lurton, delivering the opinion:

"Undoubtedly, a surety may, when the contract has not been assigned to a purchaser for value without notice, when called upon to perform, show either a total or partial failure of the consideration of his principal's contract. But such a defense, when made by the surety, must be one which would be available to the principal, if sued."

Certain facts in the case were then stated which showed that the principal himself could not maintain the defense. Moreover, it appeared that there was outstanding another purchase-money note, of identically the same character, in which another party was the surety, and who had an equal right to the benefit of this defense, if it was available to a surety, and he was not before the court. It was upon this last ground that the principle of the decision in Transportation Co. v. Earhart (C. C.) 96 Fed. 925, also above cited, rests.

With regard to the question whether the evidence was sufficient to justify the verdict, it is to be observed that it is one of fact. We have examined the proofs which were given to the jury, and, without going into detail, which would serve no general purpose, we are satisfied that the court did not err in submitting the question to them. There are some minor points of trifling consequence, but we perceive no error in respect to them.

The judgment should be affirmed.